IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHERRY TATE,<br><br>Plaintiff,<br><br>v.<br><br>ILLINOIS WORKERS'<br>COMPENSATION COMMISSION,<br><br>Defendant. | Case No. 08-cv-5261<br><br>Judge Sharon Johnson Coleman<br><br>Magistrate Judge Susan E. Cox |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sherry Tate ("Tate") filed this *pro se* action against Defendant Illinois Workers' Compensation Commission ("Defendant" or "IWCC") alleging that IWCC denied her a promotion to an Administrative Assistant 1 position on the basis of her disability in violation of the Americans with Disabilities Act ("ADA" or "the Act"), as codified at 42 U.S.C. § 12101 *et seq.* (2006).[1] IWCC now moves for summary judgment alleging the undisputed facts entitle it to judgment as a matter of law. For the reasons that follow, the Court grants Defendant's motion.

**LEGAL STANDARD**

Summary judgment is an integral part of the federal rules, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Summary judgment is appropriate when the "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Vision Church v. Vill. of Long Grove*,

---

[1] Significant changes to the ADA took effect on January 1, 2009, after this action was filed. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). Since Congress did not express its intent for these changes to apply retroactively, the Court looks to the law in place prior to the amendments. *See Fredricksen v. United Parcel Serv., Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

468 F.3d 975, 988 (7th Cir. 2006); FED. R. CIV. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Factual matters that are unnecessary or irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (citations omitted).

The party seeking summary judgment has the initial burden of demonstrating the lack of any genuine issue of material fact. *Id.* To avoid summary judgment, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 322. It is not the duty of the court to scour the record in search of evidence to support or defeat a motion for summary judgment; rather, each party bears the responsibility of identifying the evidence upon which it relies. *Ruffin-Thompkins v. Experian Info. Sol'ns, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005). A court may only consider admissible evidence in assessing a motion for summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Anderson*, 477 U.S. at 255. Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of any element essential to that party's case and which the party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

A party moving for summary judgment in this district must comply with Local Rule 56.1. N.D. ILL. LR56.1(a). Under the rule, the moving party is required to file a statement of material facts as to which the moving party contends there is no genuine issue and that entitles the moving party to a judgment as a matter of law. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625,

632 (7th Cir. 2009); LR56.1(a)(3). The opposing party is required to file a response, which in the event of a disagreement, includes specific references to the affidavits, parts of the record, and any other supporting materials relied upon. *Cracco*, 559 F.3d at 632; LR56.1(b)(3). When a responding party fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). While a district court construes *pro se* filings liberally, *pro se* litigants are required to comply with the rules to ensure the evenhanded administration of the law. *See, e.g., Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001).

With these standards in mind, the Court turns now to an examination of the factual record.

## FACTUAL BACKGROUND

The following facts are drawn from the parties' summary judgment submissions and are presented in the light most favorable to Tate.[2] The Court gives no consideration to facts not supported by affidavit, sworn testimony, or by otherwise admissible evidence. The Court deems admitted any facts that are properly supported and are not disputed in accordance with the Local Rules.

Tate is employed as an Industrial Commission Information Technician for the IWCC and has been in that position since her date of hire on September 1, 2001. (Tate Dep. p. 15.) IWCC is a state agency which administers the Illinois Workers' Compensation Act and the Workers' Occupational Diseases Act. (Def.'s Consol. Rule 56.l(a) Statement ("Def.'s SOF") ¶ 8.) Tate's job responsibilities include preparing judgments and summons for Circuit Court, stamping

---

2 In connection with its reply brief, IWCC filed a motion to strike portions of Tate's response to IWCC's statement of material facts. (Dkt. No. 91.) On March 29, 2011, the Court denied the motion and informed the parties that it would only consider admissible evidence in ruling on IWCC's motion for summary judgment. (Dkt. No. 95.) The "Factual Background" section of this Memorandum Opinion and Order contains only those relevant facts that are properly supported in accordance with FED. R. CIV. P. 56 and Local Rule 56.1.

documents, communicating with attorneys who appear before the IWCC, and responding to mail correspondence. (Tate Dep. p. 16.) Tate's job title is covered by a Collective Bargaining Agreement ("CBA") between the State of Illinois and the American Federation of State, County and Municipal Employees ("AFSCME"). (*Id.* at pp. 18-19.) Tate's position is included within AFSCME's RC-14 bargaining unit. (*Id.* at p. 19.) Throughout the relevant time period, Tate has functioned as union representative for AFSCME. (*Id.* at pp. 20-21.) In this role, Tate files grievances on behalf of IWCC employees. (*Id.* at pp. 21-22.)

Other relevant personnel at IWCC include Amy Masters ("Masters"), who was the Judicial Manager/Chief of Staff for IWCC during 2004 and 2005. (Masters Aff. ¶ 2.) Masters then served as Operations Manager/Secretary to the Commission from 2006 through October 2008. (*Id.*) Dora Shabazz ("Shabazz") is the Public Service Administrator, Option 1, a position she has held since December 2004. (Shabazz Aff. ¶ 2.) In this role, Shabazz functions as a Judicial Coordinator with the responsibility to supervise individuals employed in the Administrative Assistant 1 position. (*Id.*) Prior to her current role, Shabazz was employed as an Administrative Assistant 1. (*Id.* at p. ¶ 3.) Linda Freeman ("Freeman") also holds the title of Public Service Administrator, Option 1, a position she has held since 2005. (Freeman Aff. ¶ 2.) Freeman is responsible for supervising individuals employed as court reporters and she also supervises one individual employed as an Executive Assistant. (*Id.*) At all times relevant to the matter at hand, Rebecca Paz ("Paz") was the Manager of the Human Resources Office for IWCC. (Def.'s SOF ¶ 7.)

On November 7, 2005, Tate completed a Workers' Compensation Notice of Injury form indicating that she was injured at work while operating a document stamping machine. (Tate Dep. pp. 67-69.) After submitting the notice, Tate continued to perform her job duties as she had

before the injury, with the exception that Tate's supervisor limited the number of documents that Tate was required to stamp. (*Id.* at pp. 74-75.) Tate reported numbness and discomfort in her wrists and consulted with Dr. Terry Light on February 2, 2006. (*Id.* at pp. 77-79.) Dr. Light completed a medical report indicating a diagnosis of carpal tunnel syndrome and provided Tate with wrist splints and instructions on when to wear them. (*Id.* at pp. 77-81.) Tate only wore the wrist splints at work when she was performing repetitive tasks. (*Id.* at p. 83.) On February 3, 2006, Tate completed a worker's compensation claim relating to her injury. (*Id.* at pp. 72-73.) Surgery was performed on Tate's left hand on July 18, 2006 and Tate took medical leave to recover from the procedure. (*Id.* at pp. 86-87.) To date, no surgery has been performed on Tate's right hand. (*Id.* at p. 92.)

Several weeks before Tate filed her Notice of Injury, IWCC issued a job posting on September 21, 2005 indicating four vacancies for the Administrative Assistant 1 ("AA1") position and informing interested applicants how to submit a promotional bid. (Masters Aff. ¶ 3.) The job duties of an AA1 include managing the office of the IWCC Commissioners, scheduling cases for IWCC staff attorneys, assisting counsel, drafting decisions, preparing standing orders, proofreading documents for IWCC staff members, and drafting correspondence to parties' counsel. (Shabazz Aff. ¶ 3.) Applicants for the open positions sent bids to the Human Resources Office ("HR") and HR decided which bids were successful. (Masters Aff. ¶ 3.) The AA1 job title is in the RC-28 bargaining unit within AFSCME. (*Id.*; Tate Dep. p. 98.) HR determined that employees from the RC-14 bargaining unit, to which Tate belonged, were not eligible to bid on the AA1 position. (Masters Aff. ¶ 4.) IWCC filled three of the four AA1 vacancies with employees from the RC-28 bargaining unit through the bid process. (*Id.* at p. ¶ 5.) On March 24, 2006, Tate filed a grievance with AFSCME on her behalf, and on behalf of

two other members of the RC-14 bargaining unit, alleging that the bid process violated the CBA. (Tate Dep. pp. 101-105.) AFSCME later withdrew the grievance. (*Id.* at p. 105.)

After the bid process was completed, one AA1 position remained vacant. (Masters Aff. ¶ 5.) Masters and Paz consulted with the Department of Central Management Services ("CMS"), the agency which oversees personnel matters, to determine how to fill the remaining AA1 opening. (*Id.* at ¶ 6.) CMS determined that IWCC could fill the position by either: (1) requesting a new list of external candidates; or (2) selecting from a pool of internal candidates determined by CMS to be qualified. (*Id.*) IWCC decided to fill the vacancy using the second option. (*Id.*)

Masters and Paz developed an interview process to fill the remaining AA1 position which included an interview before a panel consisting of Masters, Freeman, and Shabazz, a writing examination, and a proofreading examination. (*Id.* at ¶ 7.) The interview panel envisioned the ideal candidate as having a college degree or equivalent years of service, administrative experience, and proofreading, organization, prioritizing, and written communication skills. (*Id.* at ¶ 10.) Paz sent letters to Tate and six other candidates inviting them to interview for the open AA1 position. (*Id.* at ¶ 8.) Tate and the other candidates participated in interviews on or about May 17, 2006. (*Id.* at ¶ 9.)

Tate complained to Paz and Masters that the May interview process violated the CBA. (Tate Dep. pp. 115-17.) Tate also complained about the process to CMS. (*Id.* at pp. 117-18.) It was determined that IWCC failed to obtain authorization from CMS before conducting the May interviews. (*Id.* at ¶ 119; Masters Aff. ¶ 13.) As a result, IWCC nullified the May 17, 2006 interview process and the AA1 position remained vacant. (Masters Aff. ¶ 13.) Shortly thereafter on June 5, 2006, Tate filed a charge ("June 2006 charge") with the Illinois Department of Human

Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging she was denied a promotion due to her age and disability. (Tate Dep. pp. 39-41.)

CMS subsequently authorized IWCC to conduct interviews and the same candidates were invited to re-interview on June 15, 2006.[3] (*Id.* at ¶ 14.) The interview panelists asked the candidates questions from a pre-determined list, took notes during the interviews, and evaluated each candidate based on their responses. (Masters Aff. ¶ 15; Shabazz Aff. ¶ 10; Freeman Aff. ¶ 9.) The panelists completed a candidate evaluation form which included a separate numeric score for the interview, writing exam, and proofreading exam. (Masters Aff. ¶ 28; Shabazz Aff. ¶ 13; Freeman Aff. ¶ 12.) The candidate selected to fill the position, Serina Jenkins ("Jenkins"), received the highest numeric score. (Masters Aff. ¶ 28; Shabazz Aff. ¶ 13; Freeman Aff. ¶ 12.) On June 19, 2006, IWCC issued a Candidate Selection Report indicating that Jenkins was selected to fill the remaining AA1 vacancy and setting forth the reasons for the decision. (Def.'s SOF ¶ 58.)

Tate filed several complaints after Jenkins was selected to fill the AA1 opening. First, Tate filed an unfair labor practice charge against IWCC with the Illinois Labor Relations Board ("ILRB") on June 21, 2006 alleging that IWCC failed to promote her due to her status as an active union steward. (Def.'s SOF ¶ 62.) Second, Tate filed a grievance with AFSCME on June 22, 2006 complaining that Jenkins was selected for the AA1 position despite the fact that she had less seniority than Tate. (Tate Dep. pp. 123-27.) AFSCME later withdrew this grievance. (*Id.* at p. 134.) Third, on July 7, 2006, Tate filed an unfair labor practice charge against AFSCME with the ILRB alleging that AFSCME was working with management to erode the rights of workers under the CBA. (Def.'s SOF ¶ 63.) The ILRB issued a decision dismissing Tate's

---

[3] One of the candidates interviewed in May 2006 declined to participate in the June 2006 interviews. (Masters Aff. ¶ 14.)

claims against IWCC and AFSCME and the State Panel affirmed that decision after Tate appealed. (*Id.* at ¶ 64.) Fourth, Tate filed a second charge with the IDHR and EEOC on January 10, 2007 ("January 2007 charge"), alleging she suffered racial discrimination and retaliation at the hands of IWCC after she filed the June 2006 charge. (Def.'s SOF ¶ 65.) On July 2, 2007, Tate voluntarily withdrew the January 2007 charge. (*Id.* at ¶ 66.)

Before the second round of interviews was conducted, Tate amended her June 2006 charge to allege she was harassed in retaliation for filing the charge. (*Id.* at pp. 42-44.) The IDHR investigated Tate's disability and retaliation claims and dismissed them for lack of substantial evidence. (*Id.* at p. 49.) Tate requested a review of the dismissals and the IDHR affirmed the dismissal of the retaliation claim and vacated the dismissal of the disability discrimination claim.[4] (*Id.* at pp. 50-52.) Tate then moved to dismiss her remaining IDHR claim and requested a right to sue letter. (*Id.* at p. 53.) The IDHR issued an Order of Closure on Tate's remaining claim of disability discrimination. (*Id.* at Ex. 11.) The EEOC issued Tate a right to sue letter on her disability discrimination claim on July 1, 2008. (*Id.* at p. 57.) Tate timely filed the instant action on September 16, 2008 alleging IWCC failed to promote her in violation of the American with Disabilities Act of 1990. (Dkt. No. 1.) Tate later amended her complaint to add claims of retaliation and defamation. (Dkt. No. 25.) The Court dismissed the additional claims on April 6, 2010. (Dkt. No. 38.)

## DISCUSSION

IWCC claims that summary judgment should be entered in its favor because there is no genuine issue of material fact for a jury to consider. IWCC contends that the record contains no evidence showing Tate is disabled within the meaning of the ADA. In support, IWCC argues

---

4 At Tate's request, the IDHR administratively closed Tate's age discrimination charge. (2/25/2008 IDHR Order, submitted as Ex. 10 to Tate Dep.)

that the record evidence establishes only that Tate reported that she was diagnosed with carpal tunnel syndrome. After reporting her condition, Tate's job duties remained unchanged and no one at IWCC made any remarks to Tate about her condition or believed that her condition substantially limited Tate's ability to perform her administrative job. IWCC also argues that the undisputed evidence demonstrates that Jenkins' educational credentials, administrative experience and knowledge of the job requirements were superior to those of Tate. Finally, IWCC claims the evidence shows that it hired Jenkins for the legitimate reason that she was the most qualified candidate.

In response, Tate argues that she was well qualified and entitled to the promotion to the AA1 position because she had more seniority than Jenkins and that seniority is controlling under the CBA. (Pl.'s Opp'n ¶¶ 2-3.) Tate further argues that IWCC committed various other violations of the CBA by denying employees in the RC-14 bargaining unit from participating in the bid process and by the interview process IWCC developed to fill the fourth AA1 vacancy. (*Id.* at ¶¶ 4-6.) These are the same arguments that Tate raised with, and were considered by, AFSCME and the ILRB. Tate misapprehends the scope of the Court's review as the question of whether IWCC violated the CBA is not before the Court. Further, since Tate did not complain of the bid process used to fill the first three AA1 vacancies when she filed her June 2006 charge, the question of whether IWCC discriminated against Tate in filling those vacancies is also not before the Court. The Court's review is limited to whether IWCC discriminated against Tate in violation of the ADA when it filled the fourth AA1 vacancy in June 2006.

Properly understood, the sole issue before the Court is whether a triable question exists on Tate's claim that she was denied a promotion to the fourth AA1 position in violation of the

ADA.[5] The ADA makes it unlawful for an employer to discriminate against a qualified individual with a disability in regard to any term, condition, or privilege of employment. *McPhaul v. Madison County Bd. of Comm'rs*, 226 F.3d 558, 563 (7th Cir. 2000). A plaintiff, like Tate, who lacks direct evidence of discrimination, may proceed under the indirect method by first establishing a *prima facie* case. To do so, a plaintiff must show that: (1) she is disabled under the ADA; (2) she was meeting her employer's legitimate employment expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2008). If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). The plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Id.*

An individual has a "disability" for purposes of the ADA if she can prove: (1) that she has a physical or mental impairment that substantially limits one or more major life activity; (2) that she has a record of such an impairment; or (3) that she is regarded as having such an impairment. *Nese v. Julian Nordic Constr.*, 405 F.3d 638, 641 (7th Cir. 2005). The major life activity at issue here is Tate's ability to work and earn a living. Tate, by her own admission, is presently working for the IWCC as an Industrial Commission Information Technician. She also admits that her job duties have not changed since she was diagnosed with carpal tunnel syndrome in February 2006. Consequently, Tate cannot show that her carpal tunnel syndrome substantially limits her ability to work. Nor has Tate adduced any evidence showing a record of

---

5 Tate did not allege in her Amended Complaint that IWCC failed to reasonably accommodate her alleged disability. (Dkt. No. 25 p. 4.) The ADA imposes a duty upon an employer to provide reasonable accommodations to qualified individuals with a disability upon request. *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2007). The record establishes that Tate did not request any accommodation from IWCC until June 14, 2007, nearly one year after Jenkins was selected to fill the AA1 position. (Tate Dep. pp. 88-89.)

a substantially limiting impairment. Indeed, the record establishes that Tate continued to perform her duties following her injury at work, only used the wrist splints on occasion, and did not have surgery until the month after Jenkins was selected to fill the AA1 position. Tate's claim that she is disabled is simply not supported by the record. Thus, Tate can only establish her *prima facie* case if she can show that she was "regarded as" disabled by IWCC.

Under a "regarded as" claim, a plaintiff must prove that either: (1) the employer mistakenly believes the employee has a physical impairment that substantially limits a major life activity; or (2) the employer mistakenly believes that an actual, nonlimiting impairment substantially limits a major life activity. *Id.* To be considered "substantially limiting," a condition must be one that affects the plaintiff's ability to perform a class or range of jobs. *Id.* at 643. It is undisputed that Tate's carpal tunnel syndrome is an impairment and that IWCC was aware of Tate's condition. A medical condition by itself, however, does not constitute a disability under the Act. *Id.* at 642-643. The determination of disability is based not on a diagnosis of impairment but on the effect of the impairment. *See, e.g., Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566-67, 119 S. Ct. 2162, 144 L. Ed. 2d 518 (1999). To be considered substantially limiting, an impairment must prevent or severely restrict an individual from doing activities that are of central importance to most people's daily lives. *Toyota Motor Manuf., Ky., Inc. v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). Thus, the critical inquiry is whether IWCC mistakenly believed that Tate's carpal tunnel syndrome prevented or severely restricted her ability to perform the required duties of the AA1 position.

IWCC argues the record demonstrates that it did not mistakenly believe that Tate's carpal tunnel syndrome was substantially limiting and that Tate has failed to refute this evidence.

While Tate has presented evidence that she experiences pain when performing repetitive tasks, she has not shown her condition substantially limits her ability to work. Further, the fact that IWCC required Tate to stamp fewer documents after being notified of her carpal tunnel syndrome does not compel the result that IWCC regarded Tate as disabled. Tate has admitted that she can perform all of the duties required by her current position, which like the AA1 job, is an administrative position. Tate presented no evidence demonstrating that any of the decision makers believed that her condition prevented her from performing administrative tasks. The record evidence demonstrates otherwise, as IWCC considered Tate a qualified candidate for the AA1 position and invited her to interview for the position that remained open following the bid process. Moreover, IWCC presented evidence that the interview panelists did not consider Tate's carpal tunnel syndrome when they interviewed her. (Def.'s SOF ¶ 73; Masters Aff. ¶ 29; Shabazz Aff. ¶ 14; Freeman Aff. ¶ 13.) Tate failed to come forward with any evidence in rebuttal to establish that IWCC considered her carpal tunnel syndrome as significantly limiting. Curiously, Tate argues that IWCC staff members made accusations claiming that Tate had no disability despite the fact that she provided proof of her carpal tunnel syndrome. (Def.'s SOF ¶ 71.) Tate fails to appreciate that IWCC's awareness of her medical condition is not sufficient to establish that IWCC believed Tate was disabled or that her medical condition substantially limited her ability to work.

The record is bereft of any evidence establishing that Tate is disabled within the meaning of the ADA or was regarded as disabled by IWCC. Lacking such evidence, Tate cannot establish a necessary element of her *prima facie* case and thus no reasonable jury could find in her favor. The Court finds that IWCC is entitled to summary judgment in its favor. Since Tate cannot prevail in establishing a *prima facie* case, the Court need not consider whether Jenkins

was treated more favorably that Tate or whether IWCC had a legitimate and nondiscriminatory reason for promoting Jenkins into the AA1 position.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.

IT IS SO ORDERED.

_____  
Dated: May 12, 2011

Honorable Sharon Johnson Coleman  
United States District Court